COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Raphael and Lorish

ALEXANDRA ARAMBULO VENTURA

v.      Record No. 1221-21-4

WINCHESTER DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 18, 2022

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
William W. Eldridge, IV, Judge

(Jason E. Ransom; Ransom/Silvester, on brief), for appellant.
Appellant submitting on brief.

(Beth M. Coyne; Sarah Orris, Guardian *ad litem* for the minor
children; Winchester Law Group, P.C.; Orris Law Firm, on brief),
for appellee. Appellee and Guardian *ad litem* submitting on brief.


Alexandra Ventura (mother) appeals the circuit court's orders terminating her parental rights

to her six children and approving the foster care goal of adoption. Mother argues that the evidence

was insufficient to terminate her parental rights under Code §§ 16.1-283(B) and (C)(2). After

examining the briefs and record, we affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Winchester Department of Social Services was the prevailing party.

Mother and Miguel Ventura (father) are the biological parents to the six children who are the subject of this appeal.[2] In May 2020, mother gave birth to her youngest child. At that time, mother and the newborn both tested positive for cocaine and amphetamines.[3] The Winchester Department of Social Services (the Department) interviewed mother, who denied using cocaine or knowing why she had tested positive for drugs. Mother claimed that she only used "non-prescribed" Adderall once the year before. The Department also interviewed father, the maternal grandmother, and the children. Father stated that he and mother had been married since 2012. Father denied using drugs and claimed to know nothing about mother's drug use. The maternal grandmother also denied using drugs or knowing of mother's drug use. The Department requested drug screens for mother, father, the maternal grandmother, and the children. Everyone agreed that the infant would reside with the maternal grandmother pending the results of those drug screens and that mother would not reside in the home.

---

[1] The record was sealed. But the appeal requires unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father did not appeal the City of Winchester Juvenile and Domestic Relations District Court's orders terminating his parental rights.

[3] The child did not show signs of withdrawal.

- 2 -

But the results of the drug screens revealed positive results for both parents, the maternal grandmother, and five of mother's six children. The infant tested positive for cocaine, amphetamines, and methamphetamines; four of the five older children tested positive for methamphetamine; father and the maternal grandmother tested positive for methamphetamine and amphetamines; and mother tested positive for methamphetamine and amphetamines. Despite the positive drug screens, mother continued to deny that she used drugs. After receiving the positive results, the Department removed all six children, who ranged in age from infant to nine years old, and placed them in foster care because there were no viable relative placement options.

The City of Winchester Juvenile and Domestic Relations District Court entered emergency and preliminary removal orders. Later, the JDR court adjudicated that the children were abused or neglected and entered dispositional orders.[4] Mother did not appeal the dispositional orders.

When the children entered foster care, the Department required mother to meet certain goals before reunification could be achieved. One such goal was that mother obtain and maintain safe and stable housing, free of violence, criminal activity, and drug use. The Department also required mother to complete a substance abuse assessment and follow all treatment recommendations. Mother also needed to comply with random drug screens. The Department also referred mother for a mental health assessment and directed her to comply with all recommendations. The Department was concerned about mother's parenting skills, so it also referred mother to parent mentoring and coaching, as well as family counseling. The Department offered supervised visitation to mother, conditioned on her remaining substance-free during the visit.

---

[4] Mother did not admit the allegations that the children were abused or neglected but stipulated that the evidence was sufficient to support a finding that the children were "neglected or abused while in . . . her care and custody."

Although mother did not at first respond to calls to schedule the substance abuse and mental health assessments, she completed the evaluations in August 2020. The evaluator concluded that mother "would benefit from Substance Abuse Partial Hospitalization," so that she could participate in a psychiatric evaluation, trauma therapy, and drug screens. The evaluator also recommended that mother work with a parent mentor "to help support, mentor and educate [mother] on safe and positive parenting." Mother was admitted to the partial hospitalization program but was discharged from the program after missing eight group meetings. Despite being readmitted into the program after signing a "Corrective Action Plan" that explained the attendance policies, mother was again discharged after only a few days for violating the program's attendance policies. Mother attempted the program a third time but was discharged again for lack of attendance compliance.

The Department had also referred mother to family counseling with the same service provider of the partial hospitalization program, so mother's discharge from the program also led to the cancellation of her family counseling sessions. The Department referred mother to another provider for substance abuse and mental health treatment. While she met with the new provider, she never followed through with the recommendations.

While the children were in foster care, the Department requested that mother take around twenty random drug screens. Mother refused to participate in eight of these, and when she did submit a sample, she was positive for amphetamines and methamphetamine every time. Despite the positive drug screens, mother continually denied using drugs.

Mother also struggled to cooperate with her assigned parent mentor. Notwithstanding mother's stated understanding of the importance of the service, she often missed meetings and ultimately was discharged from the service in December 2020. While the Department offered mother a list of other providers, she failed to follow through with the services.

The Department had concerns about the safety of mother's home, yet mother and father continued to live in the four-bedroom house from which the Department removed the children. The Department provided mother with other housing options and referred her to several programs. Mother missed her appointments with the housing programs.

The Department offered weekly supervised visitation for mother and father. The initial visits were by video because of the COVID-19 pandemic, but by June 2020, the parents could visit the children in person. The Department reviewed the "COVID-19 Parent/Child Contact Visitation Guidelines" with them more than once, but they repeatedly failed to follow the rules. This led the Department to suspend one in-person visit, and other virtual visits took place because of COVID-19 exposures and illness. At the same time, the Department did observe "strong" bonds between mother and the children and mother's attention to their needs. When the Department continued to offer mother services, however, she did not participate.

The Department then petitioned to terminate mother's parental rights and recommended a foster care goal of adoption. On April 7, 2021, the JDR court terminated mother's parental rights and approved the foster care goal of adoption., and mother appealed to the circuit court.

In October 2021, the parties appeared before the circuit court. The Department argued for termination of mother's parental rights based on her failure to comply with the foster care plan's requirements and to show that she could parent the children safely. The Department presented evidence that mother had not completed substance abuse treatment, mental health treatment, parent mentoring, and family counseling, and also that mother had continued to test positive for drugs while denying that she used drugs.

At the time of the circuit court hearing, the children had been in foster care for about seventeen months and were all living in the same foster home. The Department presented evidence that the children were "very attached" to their foster family. While two of the older children first

struggled with adjusting to foster care, the older children's behaviors improved after participating in recommended therapy, and they learned to manage their emotions. Three of the younger children also required therapy; one to address attachment issues, one to address speech delay, and one to address "low muscle tone."

The three older children attended school in kindergarten, third grade, and fourth grade; the three younger children were in daycare. The kindergartener was "doing very, very well" and "very excited to attend school." The third grader was improving and "catching up" academically with the other students. The fourth grader also was improving and had an Individualized Education Plan for additional support in school. The older children also participated in sports and church activities.

Mother admitted to the circuit court that she had "messed up" by not regularly attending the substance abuse treatment and using drugs. Mother, however, claimed that she was no longer using illegal drugs because she was "trying to get everything together." Mother also acknowledged that she stopped attending therapy, even though it was recommended that she continue with it, and did not explain why she had missed some of her appointments with the parent mentor.

Mother testified that she had moved out of her previous home and was living with father, the maternal grandmother, and her boyfriend in another town, but that mother did not know the address. Mother explained that while the new residence had only two bedrooms, this was a temporary arrangement until they could move to a three-bedroom apartment in Winchester. When asked about her future plans, mother testified that the children were her "main priority" and that while she lacked a driver's license, she would "figure out" how to transport the children to therapy. Mother confirmed that she was not going to separate from father or keep the children away from him, even though his parental rights had been terminated.

After hearing the evidence and the parties' arguments, the circuit court found that mother tested positive "on every single drug test she took" and had "three different chances" to participate

in substance abuse programs but "did not take an opportunity to even complete those." The circuit court found that mother had "no real clear plan to do anything." Mother continued to use drugs and did not show her commitment to her children. The circuit court noted that the children had been in foster care for seventeen months and needed permanency, and then terminated mother's parental rights under Code §§ 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

Mother challenges the orders terminating her parental rights and approving the foster care goal of adoption. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).[5]

The circuit court terminated mother's parental rights under Code § 16.1-283(B), which states that a parent's parental rights may be terminated if it is in the best interests of the child and:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical,

---

[5] "*Ore tenus* simply means orally." *Simms v. Alexandria Dep't of Cmty. and Hum. Servs.*, 74 Va. App. 447, 470 n.21 (2022).

> mental health or other rehabilitative agencies prior to the child's
> initial placement in foster care.

Furthermore, proof that the parent has "habitually abused . . . drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning" is prima facie evidence of the conditions in subsection (B)(2). Code § 16.1-283(B)(2)(b).

"Code § 16.1-283(B) 'speaks prospectively,' as to the parent or parents' ability to remedy the conditions that led to a child's placement in foster care." *D. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 369 (2012) (quoting *Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 425 (2012) (quoting *Winfield v. Urquhart*, 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017).

Here, the Department removed the children from mother's care after her youngest child was born substance-exposed and four of her other five children tested positive for methamphetamine. Mother acknowledges that five of the six children tested positive for drugs but contends that their exposure to methamphetamine was not "a serious and substantial threat to their lives, health, or development." The circuit court disagreed, finding that mother failed to recognize how her substance abuse affected the children. The circuit court found that mother tested positive "on every single drug test she took" and "did not take an opportunity" to complete the substance abuse treatment program despite being given "three different chances." The circuit court concluded that mother did not want "to get clean" or "be there and bring these children stability." "Although the trial court did not make the express finding that the evidence supported

- 8 -

Code § 16.1-283(B)(2)(b)'s requirements, we cannot ignore the legislature's recognition of the dangers that drug addiction poses to children, as expressed in this statute." *D. Farrell*, 59 Va. App. at 370. The Department presented prima facie evidence of the conditions set forth in Code § 16.1-283(B)(2).

Mother further argues that the Department "only provided [her] with eight months to correct the conditions which resulted in the children's neglect" before it filed petitions to terminate her parental rights. She asserts that the "Department should have provided her with at least 12 months before seeking to terminate her parental rights." Whereas subsection (C)(2) mentions that a parent must have been unwilling or unable to remedy the conditions leading to the removal "within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care," Code § 16.1-283(B) "does not create specific time frames." *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 269 (2005). Rather, subsection (B) provides that a parent must "substantially correct[] or eliminate[]" the conditions that resulted in the abuse or neglect "within a reasonable period of time." *Id.* at 264-65. "'The phrase, "within a reasonable time" is not definable by any prescribed rule. Its meaning depends upon the context and the attendant circumstances; not upon mere opinion or expectation.'" *D. Farrell*, 59 Va. App. at 369-70 (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

The circuit court found that mother had seventeen months "to make her life better" and "get the help that [she] need[ed] . . . to be a good parent," but that she had not done so. The circuit court further found that while the children were in foster care, mother had developed "no real clear plan" to meet the children's needs, including how mother could get her children to therapy appointments without a driver's license. Mother asked the circuit court to give her more time to complete the necessary services, estimating that "if [she] had to" she could get everything

completed within twelve months while acknowledging that it was not fair for the children "to wait that long."

The only evidence before the court was that mother could not resume custody of the children at that time. Despite having seventeen months to do so, mother had not corrected any of the conditions for the children to return safely to her care. *See* Code § 16.1-283(B)(2). She did not complete a substance abuse treatment program, individual therapy, parent mentoring, or family counseling, and did not have suitable housing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (alteration in original) (quoting *Kaywood*, 10 Va. App. at 540).

The evidence reflected in the record on appeal was clearly sufficient for the circuit court to terminate mother's parental rights under Code § 16.1-283(B). As for mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms*, 46 Va. App. at 265 n.3. We find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), so we need not reach whether mother's parental rights also should have been terminated under Code § 16.1-283(C)(2).[6]

---

[6] Moreover, "[w]hen a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo*, 68 Va. App. at 574 n.9; *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 5-6 (2005) (finding that where the termination of parental rights was justified under one subsection of Code § 16.1-283, the Court did not need to address whether termination was also appropriate under another subsection).

CONCLUSION

For these reasons, the circuit court's ruling is affirmed.

*Affirmed.*